David W. Criswell, OSB No. 925930
criswelld@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Rodolfo A. Camacho Trustee

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| THREE J'S DISTRIBUTING, INC. | ) | CASE NO. 18-32288-pcm7 |
| | ) | |
| Debtor | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| RODOLFO A. CAMACHO, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | AD. PROC. NO. |
| | ) | |
| | ) | COMPLAINT TO (1) AVOID |
| v. | ) | FRAUDULENT TRANSFER; (2) |
| | ) | AVOID PREFERENTIAL TRANSFER; |
| CHRISTOPHER CHURCH and SHERYL | ) | AND (3) SUBORDINATE CLAIM OF |
| CHURCH | ) | CREDITOR |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff alleges as follows:

**COMMON ALLEGATIONS**

1.      This adversary proceeding is brought pursuant to (a) 11 U.S.C. § 548(a)(1)(B) to

avoid a fraudulent transfer (lien perfection) made within one year prior to the petition date; (b) 11

U.S.C. § 547 to avoid a preference (lien perfection) made within one year prior to the petition date;

PAGE 1      COMPLAINT TO (1) AVOID FRAUDULENT TRANSFER; (2) AVOID
            PREFERENTIAL TRANSFER; AND (3) SUBORDINATE CLAIM OF
            CREDITOR
**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

718866.0001/7511267.1

Case 18-03123-pcm    Doc 1    Filed 12/10/18

and (c) 11 U.S.C. § 510(b) for mandatory subordination of the claim of Christopher and Sheryl Church which is for damages arising from the purchase or sale of a security of the Debtor.

2.      This is a core proceeding and the Court has jurisdiction over this action under 28 U.S.C. §§ 1334, 157(b)(1), and 157(b)(2)(F), (G) and (O).

3.      On June 29, 2018 (the "Petition Date"), three petitioning creditors filed an involuntary petition for relief against the Debtor under Section 303 of the Bankruptcy Code (the "Code").  On August 15, 2018, the Debtor and the petitioning creditors entered into a Stipulated Consent to Order for Relief.  On August 16, 2018, the Bankruptcy Court entered an order for relief.

4.      Rodolfo A. Camacho was appointed trustee of the Debtor's estate.

5.      Prior to the Petition Date, Defendants Christopher Church and Sheryl Church (together, "Churches") owned 200 shares of stock in the Debtor.  On January 1, 2006, Churches, the Debtor, Constantin F. Ionescu, James R. Carty, and Jon R. Jones entered into a Stock Purchase and Sale Agreement (the "Stock Sale Agreement").  A copy of the Stock Sale Agreement is attached hereto as Exhibit A.

6.      The Stock Sale Agreement provided for the redemption of 26 shares of stock by the Debtor and the purchase of the balance of the shares of stock (174 shares) by Constantin F. Ionescu, James R. Carty, and Jon R. Jones (each a "Buyer", and together, "Buyers").

7.      The Company redeemed the 26 shares from the Churches by transferring a Picasso painting and a Cadillac Escalade to the Churches, and forgiving a $278,000 loan owing by the Churches to the Debtor on closing.

8.      As stated, the Stock Sale Agreement also contemplated a sale of 174 shares by the Churches to the Buyers.  The Stock Sale Agreement provided that the purchase price for each Buyer to purchase 57 shares owned by the Churches was $800,000 (i.e. $800,000 owed by Ionesco for the purchase of 57 shares by Ionesco, another $800,000 owed by Carty for the purchase of 57 shares by Carty, and another $800,000 owed by Jones for the purchase of 57 shares by Jones). On closing, each Buyer executed a separate and distinct Promissory Note in favor of the Churches,

PAGE 2      COMPLAINT TO (1) AVOID FRAUDULENT TRANSFER; (2) AVOID
                    PREFERENTIAL TRANSFER; AND (3) SUBORDINATE CLAIM OF
                    CREDITOR

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

718866.0001/7511267.1

Case 18-03123-pcm    Doc 1    Filed 12/10/18

each in the amount of $800,000 (together, the "Buyer Notes"). Copies of the respective Buyer Notes are attached hereto as Exhibits B, C and D. Under the Stock Sale Agreement, the Churches retained three (3) shares of stock in the Debtor (the "Retained Shares"). The Stock Sale Agreement provides that the Churches shall deliver the Retained Shares to Ionescu, Carty and Jones (one (1) share each), once the Buyer Notes are paid in full and Ionescu, Carty and Jones each pay an additional $1,000 to the Churches.

9. Notably, the Debtor is not an obligor under the Buyer Notes. The obligors under the Buyers Notes are Ionescu, Carty and Jones, respectively. Yet the Debtor executed and delivered to the Churches in connection with closing of the Stock Sale Agreement a Security Agreement under which the Debtor granted a lien and security interest to the Churches in substantially all of its assets to the Churches to secure the obligations of Ionescu, Carty and Jones to the Churches under the Buyer Notes. A copy of the Security Agreement is attached hereto as Exhibit E. The Stock Sale Agreement states that the Security Agreement was given by the Debtor "in consideration for the noncompetition and other provisions of the employment agreement between the Company and Sellers of approximately even date herewith, and for other good and valuable consideration." (Exhibit E, Stock Sale Agreement, Section 7.)

10. A copy of the Employment Agreement executed by the Debtor and Christopher Church and by the Debtor and Sheryl Church (together the "Employment Agreements") are attached hereto as Exhibit F and Exhibit G. Under his Employment Agreement, Christopher Church agreed not to compete with the Debtor and the Company agreed to pay Christopher Church the sum of $1,000 per month. The term of the Charles Church Employment Agreement is ten years commencing on January 1, 2005, and expiring on December 31, 2015. Sheryl Church agreed under her Employment Agreement not to compete with the Debtor. The term of the Sheryl Church Employment Agreement expired on December 31, 2011.

11. The Churches filed a UCC-1 financing statement on January 11, 2006, File No. 7150193 (the "Original Financing Statement") to perfect the grant of a security interest by the

COMPLAINT TO (1) AVOID FRAUDULENT TRANSFER; (2) AVOID PREFERENTIAL TRANSFER; AND (3) SUBORDINATE CLAIM OF CREDITOR

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

718866.0001/7511267.1

Debtor to the Churches under the Security Agreement. The Original Financing Statement was continued by the filing of a continuation statement on January 7, 2011 ("2011 Continuation Statement"). Copies of the Original Financing Statement and a print out from the Oregon Secretary of State's office from March 1, 2011, evidencing the Continuation Statement are attached hereto as Exhibit H and Exhibit I. The Original Financing Statement was not continued beyond 2016 and therefore lapsed on January 11, 2016.

12.     In connection with the Stock Sale Agreement, the Churches and the Buyers also executed a Voting and Shareholders Agreement ("Voting Agreement"). A copy of the Voting Agreement is attached hereto as Exhibit J. Under the Voting Agreement, the Churches maintained control over the Debtor. The recitals to the Voting Agreement state that the parties desire "to provide for the manner in which they will vote their shares in connection with the election of directors of the Company until the purchase price for the Shares is paid in full."

13.     The Voting Agreement gives the Churches "[i]n every election of the members of the Board" voting power to elect four directors and gives Ionescu, Carty and Jones the power to collectively elect three directors. The Voting Agreement also gives the Churches proxy to vote the shares of Ionescu, Carty and Jones (Exhibit J at Section 4). The Voting Agreement also gives the Churches an absolute right to block any amendment or modification of the agreement (*Id.* at Section 12) and states that the agreement "terminates upon the payment in full by Shareholders No. 2, No. 3, and No. 4 (Ionescu, Carty and Jones) or their obligations to Shareholder No. 1 (Churches) to purchase the Shares of the Company and to satisfy their obligations under the Promissory Notes and other documents given by Shareholders No. 2, No. 3, and No. 4 to Shareholder No. 1 in conjunction with the sale of Shares by Shareholder No. 1 to Shareholders No. 2, No. 3, and No. 4." (*Id.* at Section 11).

14.     On January 30, 2018, more than two years after the lapse of the Original Financing Statement and within one year prior to the Petition Date, the Churches filed a UCC-1 financing

PAGE 4     COMPLAINT TO (1) AVOID FRAUDULENT TRANSFER; (2) AVOID PREFERENTIAL TRANSFER; AND (3) SUBORDINATE CLAIM OF CREDITOR

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

718866.0001/7511267.1

Case 18-03123-pcm     Doc 1     Filed 12/10/18

statement with the Oregon Secretary of State (Lien No. 91447371) (the "2018 Financing Statement"). A copy of the 2018 Financing Statement is attached hereto as Exhibit K.

15.     The Churches were a statutory "insider" at the time of the filing of the 2018 Financing Statement as they were a person in control of the Debtor pursuant to the Voting Agreement 11 U.S.C. § 101(31). The Churches were also a non-statutory insider for the separate and independent reason of the nexus between their right to file a UCC-1 as a secured creditor which arose out of the Churches prior ownership of all of the shares of the Debtor, and the Churches then existing rights and remedies against Ionescu, Carty and Jones under the Buyer Notes and related agreements.

**COUNT ONE**

**(Avoid and Recover Fraudulent Transfer
Under 11 U.S.C. § § 548(a)(1)(B) and 550)**

16.     The Trustee restates and incorporates the allegations of paragraphs 1 through 15 above.

17.     The filing of the 2018 Financing Statement constituted a transfer under 11 U.S.C. § 101(54) and 11 U.S.C. § 548(a)(1).

18.     The Churches did not give reasonably equivalent value to the Debtor in exchange for the filing of the 2018 Financing Statement. The Debtor is not an obligor under the Buyer Notes. The terms of the Employment Agreements had expired at the time of the filing of the 2018 Financing Statement. There was no "antecedent debt of the Debtor" to the Churches in existence at the time of the filing of 2018 Financing Statement within the meaning of Section 548(d)(2)(A). The Debtor received nothing in exchange for the transfer effected by the filing of the 2018 Financing Statement. To the extent there was antecedent debt of the Debtor to the Churches in existence as of January 30, 2018, such antecedent debt was not of reasonably equivalent value to the value of the transfer made to the Churches in January 2018 by virtue of the filing of the 2018 Financing Statement.

PAGE 5     COMPLAINT TO (1) AVOID FRAUDULENT TRANSFER; (2) AVOID
             PREFERENTIAL TRANSFER; AND (3) SUBORDINATE CLAIM OF
             CREDITOR

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

19.     The Debtor was insolvent at the time of the filing of the 2018 Financing Statement.

20.     The transfer effected by the filing of the 2018 Financing Statement was made to or for the benefit of an insider and therefore the elements of Section 548(a)(1)(B)(IV) have been met.

21.     The Trustee is entitled to a judgment avoiding the lien created by the 2018 Financing Statement under 11 U.S.C. § 548(a)(1)(B), and recovering such lien for the benefit of the estate under 11 U.S.C. § 550.

## COUNT TWO

### (Avoid and Recover Preferential Transfer
### Under 11 U.S.C. § § 547 and 550)

22.     The Trustee restates and incorporates the allegations of paragraphs 1 through 21 above.

23.     To the extent that there was antecedent debt owing by the Debtor to the Churches at the time of the filing of the 2018 Financing  Statement, the Trustee may avoid the lien created by the 2018 Financing Statement under Section 547 of the Code as such transfer (a) was made to or for the benefit of a creditor; (b) on account of antecedent debt; (c) made while the Debtor was insolvent; (d) made to or for the benefit of an insider within one year before the date of the filing of the petition (e) that enabled the Churches to receive more than the Churches would receive if the case were a case under chapter 7 of the Code and such transfer had not been made and the Churches received payment to the extent provide by the Code.

24.      The Trustee is entitled to a judgment avoiding the lien created by the 2018 Financing Statement under 11 U.S.C. § 547 and recovering such lien for the benefit of the estate under 11 U.S.C. § 550.

## COUNT THREE

### (Mandatory Subordination Under 11 U.S.C. § 510(b))

25.     The Trustee restates and incorporates the allegations of paragraphs 1 through 24 above.

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

718866.0001/7511267.1

26.     The claim of the Churches against the Debtor is for damages arising from the purchase or sale of a security of the Debtor within the meaning of Section 510(b) of the Code.

27.     As such, the claim of the Churches against the Debtor must be subordinated to all creditors and be given the same priority as common stock of the Debtor.

28.     To the extent required, the Court should order that any lien securing the Churches claim be transferred to the estate pursuant to Section 510(c)(2) of the Code.

WHEREFORE, Plaintiff requests that this Court enter a judgment:

A.     On Count One, avoiding the lien created by the 2018 Financing Statement and recovering the lien created thereunder for the benefit of the estate.

B.     On Count Two, avoiding the lien created by the 2018 Financing Statement and recovering the lien created thereunder for the benefit of the estate.

C.     On Count Three, subordinating the claim of the Churches to all creditors and providing that such claim shall have the same priority as common stock of the Debtor, and to the extent required, ordering that any lien securing the Churches claim be transferred to the estate.

DATED:  December 10, 2018

LANE POWELL PC


By /s/ David W. Criswell
   David W. Criswell, OSB No. 925930

Attorneys for Rodolfo A. Camacho, Trustee

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

718866.0001/7511267.1

# STOCK PURCHASE AND SALE AGREEMENT

This STOCK PURCHASE AND SALE AGREEMENT ("Agreement") is executed effective the 1st day of January, 2006, by and between **CHRISTOPHER J. CHURCH** and **SHERYL J. CHURCH** ("Churches"), **CONSTANTIN F. IONESCU** ("Ionescu"), **JAMES R. CARTY** ("Carty") and **JON R. JONES** ("Jones"). Ionescu, Carty and Jones may hereafter be referred to individually as a "Buyer" and collectively as the "Buyers." **THREE J's DISTRIBUTING, INC.** (the "Company") is an Oregon corporation and is a party to this Agreement with respect to a redemption of a portion of the Churches' shares of Company and obtaining certain covenants from Churches and agreeing to provide a security interest in the Company's assets to secure performance of the obligation of the Buyers.

## RECITALS

**WHEREAS,** the principal place of business of the Company is at Clackamas, Oregon; and

**WHEREAS,** Churches own two hundred (200) shares of voting common stock of the Company ("Shares");

**WHEREAS,** Churches intend to sell twenty-six (26) shares of the Company to Company ("Redeemed Shares");

**WHEREAS,** Churches desire to retain three (3) shares of the Company stock ("Retained Shares") and to sell one-third (1/3) fifty-seven (57) of the Shares remaining after transfer of the Redeemed Shares ("Remaining Shares") to each Buyer;

**WHEREAS,** each Buyer desires to buy one-third (1/3) fifty-seven (57) of the Remaining Shares from Churches and each Buyer will also purchase one of the three (3) Retained Shares as specified in Section 2 of this Agreement; and

**WHEREAS,** each of the Buyers are and have been managerial employees of Company or contractors contracting with the Company for a number of years and are intimately familiar with the operations and financial affairs of the Company and are fully apprised thereof; and

**WHEREAS,** the parties agree that the respective sale and redemptions shall be pursuant to the terms and conditions of this Agreement.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the premises herein set forth and the Recitals which are incorporated by this reference, the parties do hereby agree as follows:

1.      <u>Redemption by Company</u>.  Company hereby redeems twenty-six (26) shares of common stock of the Company from Churches referred to as the Redeemed Shares in exchange for a Picasso painting owned by the Company with a value of Forty-Four Thousand One Hundred Dollars ($44,100), the termination of an obligation to repay a loan from Company to Churches in the amount of Two Hundred Seventy-Eight Thousand Dollars ($278,000), and a 2002 Cadillac Escalade with a value of Twenty Thousand Five Hundred Sixty Dollars ($20,560).  Churches warrant to Company that they have absolute and unencumbered title to the Redeemed Shares free and clear of all claims, equities of others, security interests, mortgages, pledges, liens, restrictions on transfers, and other encumbrances of every nature whatsoever. This sale of the Redeemed Shares to the Company shall be effective January 1, 2006.

2.      <u>Purchase by Buyers of Churches' One Hundred Seventy-Four (174)</u> <u>Shares of Voting Common Stock</u>.  Churches hereby deliver to each Buyer fifty-seven (57) of the Shares which are endorsed to each Buyer for a purchase price of Eight

Hundred Thousand Dollars ($800,000.00), which amount is one third (1/3) of the Remaining Shares. In addition, one (1) share of the three (3) Retained Shares shall be sold to each Buyer on the date on which the purchase price for the remaining Shares is paid in full. The purchase price for the one (1) share to be sold to each Buyer shall be One Thousand Dollars ($1,000.00). Until such three (3) shares are sold and paid for, Seller shall retain all incidents of ownership of the Retained Shares.

3. <u>Payment</u>. The purchase price for the fifty-seven (57) Shares will be evidenced by a Promissory Note ("Note") from each Buyer in the face amount of Eight Hundred Thousand Dollars ($800,000.00) payable according to the terms of the Note, a true copy of which is attached hereto as *Exhibit A* and by this reference incorporated herein. The Note will be executed contemporaneous with the execution of this Agreement. It is agreed by the Company and each Buyer (unless otherwise agreed to by Churches) that the Company will take all reasonable actions to forward funds to each Buyer monthly via electronic funds transfer in an amount equal to the payments to Churches, and one business day later the monthly payments will be forwarded via electronic funds transfer to Churches' bank account. All parties will sign documents required to effect these electronic funds transfers. The purchase price for the remaining one (1) share being sold to each Buyer shall be $1,000, which amount shall be paid according to Section 2. No interest shall accrue on the purchase price for the Retained Shares.

4. <u>Employment and Noncompetition Provisions</u>. As an integral part of this transaction and contemporaneous with the execution of this Agreement, Company and each of Christopher Church and Sheryl Church will enter into an Employment Agreement, *Exhibits B* and *C*, with Churches (respectively) whereby, in return for

consideration set forth in such Employment Agreement and in partial consideration of the terms hereof, agree to provide limited services to Company and agree to the noncompetition and nonsolicitation provisions of such Employment Agreement. Should a Buyer, Buyers or Company default under this Agreement, the Promissory Notes, Trust Deeds, Pledge Agreements, Security Agreement(s), or other documents related to this transaction ("Transaction Documents"), and the Churches give notice of such default to the defaulting Buyer (and the default is not cured as specified in the Transaction Documents), then the noncompetition provisions of the Employment Agreements shall be terminated, and the Buyer in default shall be subject to a noncompetition provision that he will not undertake any actions which are competitive with Company in any state which Company does business, or sells any products to any of Company's clients for a period of three (3) years after the later of such notice of default or Buyer no longer being a Stockholder of Company, as specified in the Noncompetition Agreement dated January 1, 2006, in the form specified in *Exhibit D*.

5. <u>Pledge Agreement</u>. Contemporaneous with the execution of this Agreement, each Buyer will execute a Pledge Agreement encumbering the Remaining Shares and the Gifted Shares owned by each such Buyer as security for repayment of such Buyer's Note. The Pledge Agreements will be in the form attached as *Exhibit E* hereto and by this reference incorporated herein.

6. <u>Trust Deed</u>. Contemporaneous with the execution of this Agreement, each Buyer and each of Buyer's spouses will execute a trust deed encumbering his personal residence as security for repayment of such Buyer's obligations under such Buyer's Note ("Trust Deed"). Each Trust Deed will be in the form attached hereto as *Exhibit F* and by this reference is incorporated herein.

7.   <u>Security Interest in Company Assets</u>.   Contemporaneous with the execution of the Agreement and in consideration for the noncompetition and other provisions of the employment agreement between Company and Sellers of approximately even date herewith, and for other good and valuable consideration, Company shall execute and deliver to Churches a security agreement encumbering all or substantially all of the assets of the Company as security for repayment of the Notes ("Security Agreement"). The Security Agreement will be in the form of *Exhibit G* and by this reference is incorporated herein.

8.   <u>Closing</u>.   The closing for this Agreement shall be simultaneous with and conditioned on, the execution of this Agreement and the execution and delivery of the other documents described herein.  The Closing Date shall be on or about January 6, 2006, with an effective date of January 1, 2006.

9.   <u>Representations, Warranties and Covenants of Churches</u>.  Churches hereby represent and warrant to and covenant with Buyers as follows:

a.   That Churches have absolute and unencumbered title to the Retained Shares and the Remaining Shares free and clear of all claims, equities of others, security interests, mortgages, pledges, liens, restrictions on transfer, and other encumbrances of every nature whatsoever;

b.   That there are no known proceedings or litigation of any kind pending against Churches with respect to the Retained Shares or Remaining Shares which would or could constitute a lien on the Shares or which would or could contest Churches' ownership of or rights to transfer ownership of the Shares to Buyers;

c.   That Churches own, free of all liens and encumbrances, the Retained Shares and the Remaining Shares and agree at their expense to defend Buyers'

right, title and ownership of the Retained Shares and the Remaining Shares against the claims and demands of all persons whomsoever arising before the closing, except for such claims and demands by such persons claiming through Buyers or as a result of acts, errors or omissions of Buyers; and

d.     That this Agreement has been duly and validly executed and delivered by Churches and constitutes a valid and legally binding agreement and is enforceable in accordance with its terms.

The foregoing representations and warranties shall be true and correct as of and prior to closing and the representations and warranties set forth herein shall survive the closing.

10.     <u>Representations, Warranties and Covenants of Buyers</u>.  Each Buyer hereby represents and warrants to and covenants with Churches as follows:

a.     That this Agreement has been duly and validly executed and delivered by Buyers and constitutes the valid and legally binding agreement of that Buyer and is enforceable in accordance with its terms;

b.     Both in his capacity as a former and/or current management employee of Company and/or as a contractor with the Company, and in his status as a potential purchaser of the Retained Shares and the Remaining Shares, each Buyer has been given the opportunity to ask questions of the Company's officers and directors about the Company's operation, products, and business plans;

c.     Both in his capacity as a former and/or current management employee of Company and/or as a contractor with the Company, and in his status as a potential purchaser of the Retained Shares and the Remaining Shares, each Buyer or his agents have had the opportunity to examine the Company's books, records, accounts

and financial records and each Buyer has sufficient knowledge of the financial matters to analyze such material and evaluate the merits and risks of owning the Shares being sold hereunder. No Buyer has relied upon any verbal representations of Churches in determining to acquire the Shares;

d. Each Buyer understands that the Shares have not been registered under the Securities Act of 1933, as amended, or any other federal or state securities law, and that Buyers will have no right to require of Churches or the Company such registration in the future and that each Buyer's right to transfer the Shares at some point in the future may be restricted by the Securities Act of 1933, as amended, as well as by other relevant federal and state securities laws;

e. Each Buyer acknowledges that he is acquiring the Shares for his own account and not with a view toward resale or distribution; and

f. Each Buyer agrees to execute and become a party to that Voting Agreement and Stockholder Agreement attached hereto as *Exhibit H*.

g. Carty does hereby agree to indemnify, defend and hold harmless Churches and the Company against any claims, demands, liabilities, arbitrations and lawsuits with respect to Carty's prior sales and merchandising business, including any entities of which he was an owner. Upon Churches or Company receiving a Claim or notice of Claim, Churches or Company will give written notice to Carty, who will hire legal counsel, reasonably acceptable to Churches and Company, which will defend Churches and Company, and Carty will be responsible for any judgments, attorney fees or costs in any way related to the claim.

The foregoing representations and warranties shall be true and correct as of and prior to closing and the representations and warranties set forth herein shall survive the closing.

11. <u>Default</u>. If any Buyer fails to fulfill any obligation under this Agreement or any of the Transaction Documents, then, after Seller gives ten (10) days written notice of default and opportunity for such Buyer to cure (unless otherwise specified in the Transaction Documents), such Buyer shall be in default and this Agreement and all of the Transaction Documents shall be in default with respect to that Buyer and the Company. If a Buyer is declared in default, then Seller shall give the Company and all other Buyers five (5) days written notice and opportunity to cure such default. Seller shall only be required to deliver two (2) such notices of default to the Company and nondefaulting Buyers in any one calendar year. The Buyers and Company intend to enter into an agreement between themselves regarding what shall occur if a nondefaulting Buyer or the Company cure a defaulting Buyer's obligation.

12. <u>Notices</u>. All demands and notices given hereunder shall be sent by registered mail addressed to the respective parties at the addresses set forth below, or to such other address as each may hereafter designate by registered mail.

If to Churches:              Christopher and Sheryl Church
5433 SE Scenic Lane, #200
Vancouver, WA 98661

With a copy to:            Darin D. Honn
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205

If to Ionescu:            Constantin F. Ionescu
5830 SW 177th Avenue
Aloha, OR 97007

| If to Carty: | James R. Carty |
| | 6259 SE 32nd Terrace |
| | Gresham, OR 97080 |
| | |
| If to Jones: | Jon R. Jones |
| | 13331 S. James Court |
| | Oregon City, OR 97045 |

13.  <u>Arbitration</u>.  Any dispute or controversy arising out of or in connection with this Agreement, or the breach thereof, shall be determined and settled by arbitration in Portland, Oregon, in accordance with the rules of the U.S. Arbitration and Mediation Service or the Arbitration Service of Portland, with the person commencing arbitration choosing the arbitration service.  Any award rendered therein shall be final and binding on the parties and judgment may be entered thereon in any court of competent jurisdiction.  This provision shall not prevent a party from seeking in a court of competent jurisdiction an order or judgment for provisional, equitable or injunctive relief, or appearing or filing in a lawsuit where a third party not subject to this Arbitration is a party or is a necessary party.

14.  <u>Attorneys' Fees</u>.  If Seller shall retain counsel to enforce this Agreement or the Transaction Documents, the alleged defaulting Buyer shall be responsible to pay the Seller's costs and attorney fees.  Should an arbitration, lawsuit, bankruptcy proceeding, insolvency proceeding or an appeal from any of the proceedings be filed, and Seller incurs any costs or attorney fees to protect its interest or enforce or interpret this Agreement or the Transaction Documents, then Seller's costs and attorney fees shall be paid by the alleged defaulting Buyer, unless it is found by the judge, jury or arbitrator that the Buyer is not in default, at which time the prevailing party(ies) shall be entitled to its/their costs and attorney fees.

15.   <u>Binding Effect</u>.  This Agreement shall be binding upon and inure to the benefit of the respective parties hereto, their legal representatives, successors and assigns.

16.   <u>Entire Agreement</u>.   This Agreement supersedes all agreements previously made between the parties hereto, their legal representatives, successors and assigns.

17.   <u>Non-Waiver.</u>  No delay or failure by any party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

18.   <u>Headings.</u>  Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

19.   <u>Governing Law</u>.  This Agreement shall be construed in accordance with and governed by the laws of the State of Oregon.

20.   <u>Advice of Counsel</u>.   Churches, Company and Buyer by their signatures hereby:

a.   Acknowledge that Darin D. Honn and Sussman Shank LLP have provided legal advice to only Churches in connection with this transaction.

b.   Acknowledge that each has been advised to seek separate legal counsel.

c.   Acknowledge that Darin D. Honn and Sussman Shank LLP have provided legal services to Three J's Distributing, Inc. and Constantin F. Ionescu on unrelated matters and may continue to do so in the future.

d.   Consent to Darin D. Honn and Sussman Shank LLP representing only Churches in this transaction and waive any conflict of interest, if any, which may potentially exist.

21.   Construction.   The terms of this Agreement and the Transaction Documents were negotiated between the parties, and should any ambiguity occur, it shall not be construed against any party as the drafter.

21.   Payment of Fees and Costs.   All parties hereto agree that Company shall reimburse Churches for all attorney fees or costs incurred in this transaction.

22.   Effective Date.   The effective date of the sale of Churches' sale of the Redeemed Shares to Company and the Remaining to Buyers shall be the 1st day of January, 2006.

Three J's Distributing, Inc.

_____
By Christopher Church,
Chairman of the Board

_____
Christopher J. Church

_____
Sheryl J. Church

_____
Constantin F. Ionescu

_____
James R. Carty

_____
Jon R. Jones

# PROMISSORY NOTE

$800,000.00                    January 1, 2006                    Portland, Oregon

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Christopher J. Church and Sheryl J. Church, at 5433 SE Scenic Lane, #200, Vancouver, Washington 98661, the principal sum of Eight Hundred Thousand and 00/100 Dollars ($800,000.00), together with interest on the unpaid principal balance.

The undersigned shall pay equal monthly payments in the amount of Four Thousand dollars ($4,000) for the first thirty-six (36) months commencing January 1, 2006 with the first payment due February 1, 2006. During the first thirty-six (36) month period, the unpaid principal balance shall accrue interest at the rate of Four and One Half percent (4.5%) which is included in the payment. Commencing January 1, 2009, the balance shall be amortized beginning January 1, 2009 and continuing for sixty (60) months with a payment of Five Thousand Dollars ($5,000) at the interest rate of Five and One Half percent (5.5%) which is included in such payment. The new payment amount will begin on February 1, 2009, and continue through January 1, 2014. Commencing January 1, 2014, the balance shall be amortized over one hundred and forty-four (144) months at the interest rate equal to the rate charged on ten (10) year treasury notes, plus one percent (1%), until January 1, 2026, when all unpaid balance of principal and interest shall be due and payable in full. The interest rate shall be adjusted to reflect changes in the rate charged on ten (10) year treasury notes on January 1, 2015, and thereafter on the 1st day of January of each succeeding year. The amount of the required monthly payment shall

be recalculated as of January 1 of each year, commencing January 1, 2015 to reflect change in the interest rate. Each monthly payment shall be made on the 1st day of each month.

In the event any payment (including, without limitation, any interim or final payment of principal) hereunder is not received by the holder hereof within ten (10) days of the due date thereof or should a default occur under the Pledge Agreement or the Trust Deed given as security for this Note and after the expiration of any applicable cure period, if any, the holder may exercise any one or more of the following remedies as well as any other remedies available at law or in equity:

    i)    cause the unpaid principal balance to bear interest at a default rate of the non-default rate of interest plus five percent (5%) per annum;

    ii)    charge a late fee of five percent (5%) of the amount past due;

    iii)    declare all sums owing hereunder immediately due and payable.

The undersigned agrees to pay all collection costs and reasonable attorneys' fees incurred or paid by the holder of this Note in protecting or enforcing its rights hereunder whether or not a lawsuit is commenced and including any costs and attorneys' fees incurred in any proceeding under the federal bankruptcy laws or incurred in an appeal from any of the foregoing.

All parties liable, either now or hereafter, for the payment of this Note, hereby jointly and severally waive presentment, notice of dishonor, protest, demand and notice of nonpayment hereof, and notices of all kinds, and agree that any modification of the terms of payment or extension of time of payment shall in no way impair their liability,

PAGE 2 - PROMISSORY NOTE

and further agree that all or any part of any collateral securing this Note may be released without impairing their liability.

_Constantin F. Ionescu_

Constantin F. Ionescu

F:\CLIENTS\17212\003\PROMISSORY NOTEIONESCU3.DOC

## ADDENDUM TO PROMISSORY NOTE
## DATED EFFECTIVE JANUARY 1, 2006

Reference is made to that certain Promissory Note dated effective January 1, 2006, in the principal amount of $800,000, under which Constantin F. Ionescu is the Maker and Christopher J. Church and Sheryl J. Church are the Holders, which shall remain in full force and effect, and is hereby modified solely as follows, with no waiver of any terms thereof:

Maker may prepay the principal amount outstanding in whole or in part at any time without penalty.

This Note is secured by a Pledge Agreement dated effective January 1, 2006 between Constantin F. Ionescu and Christopher J. Church and Sheryl J. Church and the Line of Credit Trust Deed dated January 6, 2006, which Line of Credit Trust Deed secures up to One Hundred Thousand Dollars ($100,000) in debt, between Constantin F. Ionescu and Natalia G. Ionescu and Christopher Church and Sheryl Church.

DATED January 27, 2006.

_____
Constantin F. Ionescu

## PROMISSORY NOTE

$800,000.00                     January 1, 2006                     Portland, Oregon


FOR VALUE RECEIVED, the undersigned promises to pay to the order of Christopher J. Church and Sheryl J. Church, at 5433 SE Scenic Lane, #200, Vancouver, Washington 98661, the principal sum of Eight Hundred Thousand and 00/100 Dollars ($800,000.00), together with interest on the unpaid principal balance.

The undersigned shall pay equal monthly payments in the amount of Four Thousand dollars ($4,000) for the first thirty-six (36) months commencing January 1, 2006 with the first payment due February 1, 2006. During the first thirty-six (36) month period, the unpaid principal balance shall accrue interest at the rate of Four and One Half percent (4.5%) which is included in the payment. Commencing January 1, 2009, the balance shall be amortized beginning January 1, 2009 and continuing for sixty (60) months with a payment of Five Thousand Dollars ($5,000) at the interest rate of Five and One Half percent (5.5%) which is included in such payment. The new payment amount will begin on February 1, 2009, and continue through January 1, 2014. Commencing January 1, 2014, the balance shall be amortized over one hundred and forty-four (144) months at the interest rate equal to the rate charged on ten (10) year treasury notes, plus one percent (1%), until January 1, 2026, when all unpaid balance of principal and interest shall be due and payable in full. The interest rate shall be adjusted to reflect changes in the rate charged on ten (10) year treasury notes on January 1, 2015, and thereafter on the 1st day of January of each succeeding year. The amount of the required monthly payment shall

PAGE 1 - PROMISSORY NOTE

Exhibit C - Page 1 of 3

Case 18-03123-pcm   Doc 1   Filed 12/10/18

be recalculated as of January 1 of each year, commencing January 1, 2015 to reflect change in the interest rate. Each monthly payment shall be made on the 1st day of each month.

In the event any payment (including, without limitation, any interim or final payment of principal) hereunder is not received by the holder hereof within ten (10) days of the due date thereof or should a default occur under the Pledge Agreement or the Trust Deed given as security for this Note and after the expiration of any applicable cure period, if any, the holder may exercise any one or more of the following remedies as well as any other remedies available at law or in equity:

i) cause the unpaid principal balance to bear interest at a default rate of the non-default rate of interest plus five percent (5%) per annum;

ii) charge a late fee of five percent (5%) of the amount past due;

iii) declare all sums owing hereunder immediately due and payable.

The undersigned agrees to pay all collection costs and reasonable attorneys' fees incurred or paid by the holder of this Note in protecting or enforcing its rights hereunder whether or not a lawsuit is commenced and including any costs and attorneys' fees incurred in any proceeding under the federal bankruptcy laws or incurred in an appeal from any of the foregoing.

All parties liable, either now or hereafter, for the payment of this Note, hereby jointly and severally waive presentment, notice of dishonor, protest, demand and notice of nonpayment hereof, and notices of all kinds, and agree that any modification of the terms of payment or extension of time of payment shall in no way impair their liability,

PAGE 2 - PROMISSORY NOTE

Exhibit C - Page 2 of 3

and further agree that all or any part of any collateral securing this Note may be released without impairing their liability.

_____
James R. Carty

F:\CLIENTS\17212\003\PROMISSORY NOTECARTY3.DOC

PAGE 3 - PROMISSORY NOTE

Exhibit C - Page 3 of 3

## PROMISSORY NOTE

$800,000.00                    January 1, 2006                    Portland, Oregon

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Christopher J. Church and Sheryl J. Church, at 5433 SE Scenic Lane, #200, Vancouver, Washington  98661, the principal sum of Eight Hundred Thousand and 00/100 Dollars ($800,000.00), together with interest on the unpaid principal balance.

The undersigned shall pay equal monthly payments in the amount of Four Thousand dollars ($4,000) for the first thirty-six (36) months commencing January 1, 2006 with the first payment due February 1, 2006.  During the first thirty-six (36) month period, the unpaid principal balance shall accrue interest at the rate of Four and One Half percent (4.5%) which is included in the payment.  Commencing January 1, 2009, the balance shall be amortized beginning January 1, 2009 and continuing for sixty (60) months with a payment of Five Thousand Dollars ($5,000) at the interest rate of Five and One Half percent (5.5%) which is included in such payment.  The  new payment amount will begin on February 1, 2009, and continue through January 1, 2014.  Commencing January 1, 2014, the balance shall be amortized over one hundred and forty-four (144) months at the interest rate equal to the rate charged on ten (10) year treasury notes, plus one percent (1%), until January 1, 2026, when all unpaid balance of principal and interest shall be due and payable in full.  The interest rate shall be adjusted to reflect changes in the rate charged on ten (10) year treasury notes on January 1, 2015, and thereafter on the 1st day of January of each succeeding year.  The amount of the required monthly payment shall

PAGE 1 - PROMISSORY NOTE

be recalculated as of January 1 of each year, commencing January 1, 2015 to reflect change in the interest rate. Each monthly payment shall be made on the 1st day of each month.

In the event any payment (including, without limitation, any interim or final payment of principal) hereunder is not received by the holder hereof within ten (10) days of the due date thereof or should a default occur under the Pledge Agreement or the Trust Deed given as security for this Note and after the expiration of any applicable cure period, if any, the holder may exercise any one or more of the following remedies as well as any other remedies available at law or in equity:

    i)    cause the unpaid principal balance to bear interest at a default rate of the non-default rate of interest plus five percent (5%) per annum;

    ii)    charge a late fee of five percent (5%) of the amount past due;

    iii)    declare all sums owing hereunder immediately due and payable.

The undersigned agrees to pay all collection costs and reasonable attorneys' fees incurred or paid by the holder of this Note in protecting or enforcing its rights hereunder whether or not a lawsuit is commenced and including any costs and attorneys' fees incurred in any proceeding under the federal bankruptcy laws or incurred in an appeal from any of the foregoing.

All parties liable, either now or hereafter, for the payment of this Note, hereby jointly and severally waive presentment, notice of dishonor, protest, demand and notice of nonpayment hereof, and notices of all kinds, and agree that any modification of the terms of payment or extension of time of payment shall in no way impair their liability,

and further agree that all or any part of any collateral securing this Note may be released without impairing their liability.

_____
Jon R. Jones

F:\CLIENTS\17212\003\PROMISSORY NOTEJONES3.DOC

## ADDENDUM TO PROMISSORY NOTE
## DATED EFFECTIVE JANUARY 1, 2006

Reference is made to that certain Promissory Note dated effective January 1, 2006, in the principle amount of $800,000, under which Jon R. Jones is the Maker and Christopher J. Church and Sheryl J. Church are the Holders, which shall remain in full force and effect, and is hereby modified solely as follows, with no waiver of any terms thereof:

Maker may prepay the principal amount outstanding in whole or in part at any time without penalty.

This Note is secured by a Pledge Agreement dated effective January 1, 2006 between Jon R. Jones and Christopher J. Church and Sheryl J. Church and the Line of Credit Trust Deed dated January 6, 2006, which Line of Credit Trust Deed secures up to One Hundred Thousand Dollars ($100,000) in debt, between Jon R. Jones and Sharon L. Jones and Christopher Church and Sheryl Church.

DATED January 30th, 2006.

Jon R. Jones

F:\CLIENTS\17212\003\ADDENDUM TO PROMISSORY NOTE (JONES).DOC

# SECURITY AGREEMENT

## PARTIES

"Debtor ":             Three J's Distributing, Inc.
16123 SE 98th Bldg B
Clackamas, OR 97015

"Secured Parties":    Christopher J. Church and
Sheryl J. Church
5433 SE Scenic Lane, #200
Vancouver, Washington 98661

Dated Effective:     January 1, 2006

## 1.    GRANT OF SECURITY INTEREST

For valuable consideration, including the Secured Parties' entering into noncompetition provisions, the receipt and sufficiency of which is hereby acknowledged, Debtor hereby grants, transfers, and assigns to Secured Parties a lien upon and security interest in the following personal property of Debtor, wherever located, whether now owned or existing or hereafter acquired or created (hereinafter all collectively called "Collateral"):

1.1    Accounts, Notes, contracts, contract rights, chattel paper, electronic chattel paper, cash, checks, drafts, documents, instruments, money, letter of credit rights, promissory Notes, deposit and commodity accounts, including without limitation the following: investment property, commercial tort claims, payment intangibles, all rights of Debtor to receive payment in money or kind, all related supporting obligations and security, and all other evidence of indebtedness owed to Debtor from whatever source arising;

1.2    General intangibles, including, without limitation, any and all choses in action, goodwill, patents, trademarks, accounts, tax refunds, rights under contracts of insurance, and customer lists;

1.3    Equipment, goods, software, furniture, vehicles, and trade fixtures;

1.4    Inventory (including goods consigned to Debtor), raw materials, farm products, and work in process;

1.5    All records and documents relating to any and all of the foregoing including, without limitation, records of accounts and customers whether in the form of writing, microfilm, microfiche, tape, or electronic media;

1.6  All products, Proceeds, increases, accessions, renewals, replacements, and substitutions of and to any and all of the foregoing.

"Proceeds" shall include proceeds of insurance policies on the Collateral, including, without limitation, business interruption insurance.  Where the Debtor and the owner of the Collateral are not the same, "Debtor" herein shall mean the owner of the Collateral, or shall mean both the owner and Debtor as the context requires to give the Secured Parties the broadest rights and remedies.

## 2.  OBLIGATIONS SECURED

The security interest granted herein secures payment and performance of:

2.1  The debt of Constantin F. Ionescu, James R. Carty and Jon R. Jones (collectively the "Borrowers") to the Secured Parties as evidenced by their Promissory Notes, all of even date herewith, payable to the Secured Parties each in the principal amount of Eight Hundred Thousand dollars ($800,000) and all renewals, modifications, and extensions thereof (the "Notes"); and

2.2  Performance of Debtor's obligations herein and the obligations of Constantin F. Ionescu, James R. Carty and Jon R. Jones herein and of all other liabilities, direct or indirect, absolute or contingent, now existing or hereafter arising from the Debtor, Constantin F. Ionescu, James R. Carty and Jon R. Jones to the Secured Parties, including but not limited to all amounts owing to Secured Parties for covenants given and shares sold by Secured Parties to Debtor, Constantin F. Ionescu, James R. Carty and Jon R. Jones.

## 3.  SUBORDINATION.  The security interest created by this Agreement shall be subordinate to security interests in favor of other lenders providing financing to the Debtor for business operations purposes of up to one hundred thousand dollars ($100,000) which financing shall be  on commercially reasonable terms.

## 4.  DEBTOR'S REPRESENTATIONS, WARRANTIES, AND COVENANTS

Debtor represents, warrants, and covenants to Secured Parties as follows:

4.1  Lien Priority.  The Collateral is owned by Debtor and is free and clear of all liens, encumbrances, and claims of anyone else whatsoever except for the liens listed in Exhibit A.  The Secured Parties' lien shall be subject to the liens listed in Exhibit A. Debtor further agrees not to grant any other security interest in the Collateral or to permit any involuntary lien or encumbrance to attach to the Collateral.

4.2  Location/Name of Collateral.  Debtor represents and warrants that:

4.2.1  The Debtor's exact name is as set forth above;

4.2.2  The Debtor is a registered organization, organized in the State of Oregon, organizational identification number 010106-85, and its federal taxpayer identification number is 91-1287081.  The Debtor is located at 16251 SE 98th Clackamas, Oregon 97015.

4.3  <u>Notice of Post-Perfection Changes</u>.  The Debtor will immediately notify the Secured Parties of:

4.3.1  Any change in the name of the Debtor or the Debtor's use of an assumed business or trade name;

4.3.2  Any change in the state of the Debtor's location (as that term is used in ORS 79.0307);

4.3.3  Any merger between the Debtor and any third party and of any transfer by or to the Debtor of substantially all of the assets and liabilities of any entity;

4.3.4  Any substantial damage to or loss or destruction of any essential or material part of the Collateral, whether or not covered by insurance.

4.4  <u>UCC Financing Statements</u>.  The Debtor authorizes Secured Parties to authenticate and file all records (including initial Financing Statements, Certificates of Title, and control instructions to third parties, amendments, continuation statements, etc.) that are reasonably required by the Secured Parties to perfect and continue their security interest in the Collateral.  The Debtor authorizes the Secured Parties to indicate that the Financing Statement covers all assets or all personal property.  The Debtor will execute (sign, acknowledge when necessary, and deliver) any other records or documents necessary to perfect and continue the security interest under applicable federal or state statute, regulation, or treaty, including any Financing Statement necessary to perfect a security interest in fixtures.

4.5  <u>Insurance.</u>  Debtor shall insure the Collateral against loss from all hazards and shall maintain workers compensation insurance covering all employees and shall provide Secured Parties with evidence of all such coverage.  Debtor will furnish Secured Parties, upon request, with a summary in form and substance satisfactory to Secured Parties of the insurance coverage of the Debtor, certified by the president or chief executive officer of the Debtor to be complete and correct and, if requested, will furnish Secured Parties with copies of all applicable policies.  The Debtor will cause any and all insurance policies insuring the Collateral or any part thereof to name Secured Parties as loss payees thereunder and to contain a provision requiring at least ten (10) days prior notice of cancellation to Secured Parties.

4.6  <u>No Sale of Collateral Without Consent.</u>  Debtor shall not dispose of any Collateral without Secured Parties' prior permission, except Debtor can dispose of inventory in the ordinary course of Debtor's business.  In no event shall Debtor waste or destroy the Collateral or use any Collateral in violation of any statute, ordinance or policy of insurance.

4.7 <u>Inspection of Records, Further Assurances</u>. Debtor shall, at all reasonable times and from time to time, allow Secured Parties, by or through any of their agents, attorneys, and accountants, to examine, inspect, and make extracts from the books, records, and correspondence of Debtor and any subsidiaries of Debtor. Debtor, at all reasonable times and from time to time, shall, and shall cause its subsidiaries, if any, to allow Secured Parties, by or through any of Secured Parties' agents, attorneys, and accountants, to examine, inspect, and check any inventory or other Collateral. Debtor shall provide Secured Parties with access to the Collateral and to provide any office space (including computer hardware, operating systems, and software) that is reasonably necessary for the exercise of the foregoing rights. Secured Party may request and obtain an audit of the assets of Debtor, which will be conducted by the designee of Secured Party. Debtor agrees to pay up to $500 for such audit annually, if requested by Secured Party.

4.8 <u>Maintenance of Status</u>. Debtor will, at all times, maintain its corporate existence, remain or become a corporation in good standing in each jurisdiction in which it is required to be qualified, and maintain all patents, trademarks, franchises, and licenses necessary in its business to comply with all valid and applicable statutes, rules, and regulations.

4.9 <u>Taxes and Other Liens</u>. Debtor agrees to pay when due all taxes and assessments, governmental charges, claims for labor, supplies, rent, and other obligations which, if unpaid, might become a lien against any assets of the Debtor.

4.10 <u>Further Assurances</u>. Debtor will promptly cure any defects in the execution and delivery of this Security Agreement, the Notes, and any other instruments and documents referred to, mentioned, or executed in connection herewith or therewith. The Debtor will immediately execute and deliver to Secured Parties, upon request, all Security Agreements, Financing Statements, Certificates of Title, Deeds of Trust, Mortgages, Landlord Waivers, and any other instruments and documents requested by Secured Parties in any form satisfactory to Secured Parties to accomplish any covenants and agreements of the Debtor under this Security Agreement, the Notes, and under any other documents and instruments executed in connection herewith and therewith.

4.11 <u>Performance of Obligations</u>. The Debtor will do, pay, and perform every action and discharge all of the obligations provided to be performed and discharged under the Security Agreement, Notes, and any and all instruments and documents referred to, mentioned, or in connection herewith and therewith at the time or times and in the manner therein or herein specified. The Debtor will also perform all obligations to be performed pursuant to the terms of each other indenture, agreement, contract, and other instrument by which the Debtor is bound.

4.12 <u>Compliance With Laws</u>. Debtor will, at all times, comply with all laws, rules, regulations, orders, and directions of any governmental authority having jurisdiction over it or any aspect of its business.

4.13    Preservation of Collateral.  Debtor will preserve the Collateral, protect it from misuse, and use and maintain the Collateral in a careful and proper manner and in conformity with all applicable statutes, laws, ordinances, and regulations and with all required permits and licenses.

4.14    Delivery of Title Documents.  Debtor will immediately deliver to Secured Parties all Collateral which is negotiable documents, instruments, security certificates, tangible chattel paper, and all certificates of title, and will provide any endorsements and third party acknowledgments reasonably required by Secured Parties with respect to such items of Collateral.

## 5.    DISCLAIMER

Secured Parties do not assume and shall not be subject to any obligation or liability to any third parties in connection with any of the Collateral.

## 6.    PAYMENTS BY SECURED PARTIES

In the event Debtor fails to make any payment or perform any act required hereunder, Secured Parties may, in their sole discretion, but shall not be obligated to do so.  Any such sums paid or advanced by Secured Parties including, without limitation, taxes, mortgage payments, insurance premiums, attorneys fees whether awarded by a court or incurred otherwise, rent payments, repossession costs, and costs of preserving the Collateral and associated with operating Debtor's business upon default, shall become a part of the indebtedness secured hereby, which Debtor promises to pay on demand together with interest on any such advance from the date of expenditure until repaid at a rate equal to that provided in the most recently executed Notes secured hereby plus five percent (5%) per annum and, if there is no such Notes, at twelve percent (12%) per annum.  At Secured Parties' option, such sums may be added to the balance of the Notes.

## 7.    WAIVERS; NO DUTY

7.1    Debtor.    Debtor hereby waives demand, notice, protest, notice of acceptance of this Security Agreement, notice of credit extended, and notice of any other action taken in reliance hereon and all other demands and notices of any description.  This Security Agreement shall not be qualified or supplemented by course of dealing.  No waiver or modification by Secured Parties of any of the terms or conditions of this Security Agreement shall be effective unless in writing and signed by Secured Parties.  No waiver or indulgence by Secured Parties as to any required performance or other obligation of Debtor shall be construed as a waiver of any right on any future occasions.  With respect to the indebtedness secured hereby and the Collateral, Debtor assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange, or release of Collateral, to the addition or release of any party or person primarily or secondarily liable, to the acceptance of partial payments, and to the settlement, compromising, and adjusting of any thereof, all in such manner and at such time or times as Secured Parties may, in their sole discretion, deem advisable.  Secured Parties shall have no duty as to the collection or protection of Collateral or any income thereon, nor as to the preservation of any rights against prior parties.  Secured Parties

shall have no obligation to marshal Collateral or to proceed in reverse order of alienation. Debtor waives all suretyship defenses.

7.2     Borrowers.  The obligations of the Debtor under this Security Agreement shall be absolute and unconditional and shall remain in full force and effect until the entire principal, interest, penalties, premiums and late charges, if any, on the Notes and all additional payments, if any, due pursuant to any other document executed in connection with the Notes (the "Loan Documents") (collectively, the "Obligations") shall have been paid and, until such payment has been made, shall not be discharged, affected, modified or impaired on the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of the Debtor:

7.2.1   The waiver, compromise, settlement, release, termination or amendment (including, without limitation, any extension or postponement of the time for payment or performance or renewal or refinancing) of any or all of the Obligations or agreements of any of the Borrowers under the Notes or any other loan document;

7.2.2   The failure to give notice to the Debtor of the occurrence of a default under the terms and provisions of the Notes or any other loan document;

7.2.3   The release, substitution or exchange by the Secured Parties of the Collateral (whether with or without consideration) or the acceptance by the Secured Parties of any additional Collateral or the availability or claimed availability of any other Collateral or source of repayment or any nonperfection or other impairment of any Collateral;

7.2.4   The release of any of the Borrowers, Debtor or any other person primarily or secondarily liable for all or any part of the Obligations, whether by the Secured Parties or any other holder of the Notes or in connection with any voluntary or involuntary liquidation, dissolution, receivership, insolvency, bankruptcy, assignment for the benefit of creditors or similar event or proceeding affecting any or all of the Borrowers, Debtor or any other person or entity who, or any of whose property, shall at the time in question be obligated in respect of the Obligations or any part thereof; or

7.2.5   To the extent permitted by law, any other event, occurrence, action or circumstance that would, in the absence of this clause, result in the release or discharge of any or all of the Borrowers or Debtor from the performance or observance of any Obligation, covenant or agreement contained in this Security Agreement.

7.3     Full Force and Effect.  The obligations of the Debtor to Secured Parties under the Obligations shall remain in full force and effect (or be reinstated) until Secured Parties have received payment in full of all Obligations and the expiration of any applicable preference or similar period pursuant to any bankruptcy, insolvency, reorganization, moratorium or similar law, or at law or equity, without any claim having

been made before the expiration of such period asserting an interest in all or any part of any payment(s) received by Secured Parties.

7.4 <u>Enforcement</u>. The Debtor expressly agrees that the Secured Parties shall not be required first to institute any suit or to exhaust its remedies against any of the Borrowers or Debtor or any other person or party to become liable hereunder or against any Collateral, in order to enforce the Obligations.

## 8. COLLECTION OF ACCOUNTS

Unless otherwise agreed, Debtor shall have the right to collect the proceeds of accounts directly from its account debtors. Upon default, upon request of Secured Parties, Debtor shall notify its account debtors of the security interest of Secured Parties in such accounts, and Secured Parties may, in their sole discretion, notify the account debtors of Secured Parties' security interest in such accounts. Thereafter, Secured Parties shall have the right to collect, compromise, release, and discharge and to otherwise deal with such account debtors on Debtor's behalf. Debtor hereby designates and appoints Secured Parties, their successors and assigns, Debtor's true and lawful agent and attorney, with powers irrevocable, and for Debtor and in Debtor's name, place and stead, to ask, demand, receive, receipt, compromise, and give acquittance for any and all accounts which may be or become due by any other party in connection with any such accounts and, at Secured Parties' sole option, to file any claim or take any action or proceeding either in their own name, or in the name of Debtor, or otherwise, which Secured Parties deem necessary or desirable in order to collect or enforce payment of any and all accounts.

## 9. EVENTS OF DEFAULT

Each and all of the following shall be events of default under this Security Agreement if not cured within ten (10) days after written notice to Debtor and to each of the Borrowers:

9.1 Default in the payment, when due or payable, of any indebtedness of Borrowers to Secured Parties, including but not limited to the Notes;

9.2 The failure of Debtor or Borrowers to perform when or before due any other obligation of Debtor or Borrowers to Secured Parties whether under this Security Agreement or under any loan documents;

9.3 Secured Parties shall, in their sole reasonable discretion, deem that reasonable grounds exist for insecurity with respect to performance by the Debtor or Borrowers with respect to this Security Agreement, the Notes, or any loan documents or instruments executed in connection therewith, and Debtor fails to provide (within five (5) calendar days after Secured Parties give written notice to Debtor that, in Secured Parties' discretion, reasonable grounds for such insecurity exists) adequate assurance satisfactory to Secured Parties of due performance.

9.4     Debtor shall: (i) discontinue business for more than five (5) consecutive days, (ii) make a general assignment for the benefit of creditors, (iii) apply for or consent to the appointment of a receiver, trustee, or liquidator of itself or of all or a substantial part of its assets, (iv) be adjudicated bankrupt or insolvent, (v) file a voluntary petition in bankruptcy or file a petition or answer seeking reorganization or an arrangement with creditors or seek to take advantage of any other law, whether federal or state, relating to relief of debtors, or admit (by answer, by default, or otherwise) the material allegations of a petition filed against it in any bankruptcy, reorganization, arrangement, insolvency, or other proceeding (whether federal or state) relating to relief of debtors, (vi) permit or suffer any judgment, decree, or order entered by a court of competent jurisdiction which approves a petition seeking reorganization of the Debtor or which appoints a receiver, trustee, or liquidator of the Debtor or of all or a substantial part of any of the assets of Debtor, or (vii) take or omit to take any action for the purpose or result of effecting or permitting any of the foregoing.

## 10.   CROSS DEFAULT

Default hereunder shall, at Secured Parties' option, also constitute default under all other agreements between Secured Parties and Debtor, and default under any other such agreements shall, at Secured Parties' option, constitute a default hereunder.

## 11.   REMEDIES UPON DEFAULT

Upon the occurrence of any of the above events of default, Secured Parties shall have the following rights, which rights are cumulative and are in addition to all of the rights and remedies of a Secured Parties at law or in equity or under the Uniform Commercial Code of Oregon:

11.1    Secured Parties may declare immediately due and payable any and all indebtedness owed by Debtor or one or more Borrowers to Secured Parties and may terminate any commitments, if any, to make any loans or to otherwise extend credit to Debtor;

11.2    Regardless of where any Collateral or the books and records are located, Secured Parties may require Debtor to assemble all Collateral and Debtor's books and records in one or more locations and make such Collateral and the books and records available to Secured Parties;

11.3    Without removal, Secured Parties may render the Collateral unusable and may dispose of the Collateral on Debtor's premises;

11.4    Secured Parties may request confirmation from any account debtor of the status of any account upon which the account debtor is obligated;

11.5    Secured Parties may require Debtor to segregate any and all Collateral and collections and proceeds of the Collateral so that they are capable of identification, and to deliver to Secured Parties daily such collections and proceeds in kind;

11.6     Secured Parties may endorse or sign the name of Debtor on all checks, drafts, collections, receipts, or other documents, and to take possession of and open the mail addressed to Debtor and remove therefrom any payments and proceeds of the Collateral;

11.7     Secured Parties, in their sole discretion, may, with or without notice, upon filing a lawsuit to enforce or preserve its rights under this Security Agreement or at any time while such lawsuit is pending, apply for and secure the appointment of a receiver to take possession of and operate and manage Debtor's business and/or the Collateral and the income, rents, and proceeds therefrom.  The receiver may be an employee of Secured Parties.  Debtor hereby expressly waives any requirement that Secured Parties or the receiver post a bond upon the appointment of such receiver;

11.8     Secured Parties shall also have the right to enter upon the property where any Collateral is located and take possession of such Collateral and use such property, including any buildings or facilities, and any of Debtor's assets, as Secured Parties deem such use necessary or advisable in order to take possession of, hold, preserve, process, assemble, collect on, prepare for sale or lease, market for sale or lease, sell, lease, or otherwise dispose of said Collateral;

11.9     Secured Parties may remedy any default and waive any default without waiving the default remedies and without waiving any other prior or subsequent default; and

11.10 Secured Parties may grant extensions, and compromise and settle claims with respect to the Collateral, for less than face value, all without prior notice to Debtor. Debtor agrees to pay Secured Parties' expenses of retaking, holding, preparing for sale, selling, and the like, all upon demand.  Debtor shall remain liable for any deficiency.

## 12.    ATTORNEYS FEES; COSTS

In the event Secured Parties retains the services of an attorney to enforce any provision of the Notes, this Security Agreement, or any other obligation of Debtor to Secured Parties, Debtor agrees to pay reasonable attorneys fees and other costs, expenses, and disbursements (including allocated costs for in-house legal services) incurred by Secured Parties even if no suit, action, arbitration, or other proceeding is brought.  If such a suit, action, arbitration, or other proceeding is brought, Debtor shall also pay to Secured Parties the reasonable attorneys fees and other costs, expenses, and disbursements (including the allocated costs for in-house legal services) incurred in connection with such suit, action, or arbitration or other proceeding in the trial, appellate, and bankruptcy courts, including without limitation any action to lift or modify the automatic stay, determine adequate protection, use cash collateral, or relating in any way to any Disclosure Statement or Plan of Reorganization.  Debtor also agrees to pay to Secured Parties any and all costs and expenses, including reasonable attorneys fees, incurred by Secured Parties in protecting or enforcing Secured Parties' rights in the Collateral, whether or not a lawsuit is commenced.  Interest shall accrue on all such attorneys fees and other costs, expenses, and disbursements at a rate equal to that provided in the most recently

executed Notes secured hereby plus five percent (5%) per annum and, if there is no such Notes, at twelve percent (12%) per annum.

## 13. NOTICE

Each demand, notice, or other communication required hereunder or under applicable law shall be given by certified mail addressed to the party at its address set forth on the first page hereof or as changed by written notice to the other party, by facsimile showing receipt by the party, or by personal service upon the party or proper officer. Reasonable notice, when notice is required, shall be deemed to be five (5) days. Notice shall be deemed given three days after mailing, or upon actual receipt, whichever is earlier.

## 14. CONSTRUCTION AND GOVERNING LAW

As used herein, the singular includes the plural, the plural includes the singular, and masculine, feminine, and neuter mean each other, all as the context so requires or indicates. All the terms herein and the rights, duties and remedies of the parties shall be governed by the law of the State of Oregon.

## 15. JURY TRIAL WAIVER

Debtor and Secured Parties each waive the right to a trial by jury in any action or proceeding relating to any claim, offset, defense, or counterclaim, whether in a contract, tort, or otherwise, at law or in equity, arising out of or related to this Security Agreement.

## 16. ASSIGNMENT

Secured Parties' rights under this Security Agreement and the obligations secured hereby and under any of the documents executed in connection therewith may be assigned by Secured Parties from time to time. In any such case the assignee shall be entitled to all the rights, privileges, and remedies granted to Secured Parties in this Security Agreement and in such other documents.

## 17. SUCCESSORS AND ASSIGNS

All covenants and agreements herein contained by or on behalf of the Debtor shall bind its successors and assigns and shall inure to the benefit of the Secured Parties and their successors and assigns. Debtor may not assign this Security Agreement or other instruments or documents executed in connection herewith or any of the rights of Debtor hereunder without the prior written consent of Secured Parties.

18.  **SEVERABILITY**

In the event any one or more of the provisions contained in this Security Agreement shall for any reason be held to be invalid, illegal, or unenforceable, such provision or provisions shall not affect any other provision of the Security Agreement, and in lieu of such invalid, illegal, or unenforceable provision there shall be automatically added a provision as similar in terms to such invalid, illegal, or unenforceable provision as may be possible and as may be valid, legal, and enforceable.

19.  **PARAGRAPH HEADINGS**

Paragraph headings are for reference only and shall not affect the interpretation or meaning of any provision in this Security Agreement.

20.  **TIME IS OF THE ESSENCE**

Debtor agrees that time shall be of the essence in performing any act under this Security Agreement and under any instrument or document executed in connection herewith.

20.  **REPRESENTATION**

All parties to this Agreement acknowledge that Sussman Shank LLP represented only Secured Parties in this Agreement and the transaction referenced herein, and Debtor acknowledges that it is hereby recommended to obtain independent legal counsel regarding the transaction.

**IN WITNESS WHEREOF** Debtor has caused this Security Agreement to be executed by a duly authorized person as of the date hereinabove written.

Debtor:

THREE J'S DISTRIBUTING, INC.

_____
Jon R. Jones
President

**SCHEDULE A**

## LIENS

1.      Security Agreement Accounts Receivable Financing to Omnibrands, Inc. u/a/d 9/17/02.

# EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "Agreement"), dated as of this 1st day of January, 2006, is between THREE J'S DISTRIBUTING, INC. (the "Company") and CHRISTOPHER J. CHURCH (the "Employee").

## RECITALS

A.     The Company is engaged in the business of distributing bread and other food products for resale to retailers and wholesalers and commercial trucking.

B.     The Company desires to employ and retain the unique experience, abilities, and services of the Employee as Chairman of the Board of Directors

C.     The Employee agrees to perform the services set forth in this Agreement for the Company in accordance with the terms and conditions of this Agreement.

## AGREEMENT

The parties agree as follows:

## SECTION 1. EMPLOYMENT

**1.1     Term.** The term of this Agreement is for ten (10) years, commencing on January 1, 2005, and expiring on December 31, 2015 ("the Term"), unless amended or terminated by agreement of the parties as set forth in Section 9. This Agreement will then continue according to its terms on a year-to-year basis thereafter unless amended or terminated by agreement of the parties as set forth in Section 9.

**1.2     Services.** The Employee will perform such acts and do things as may be necessary to properly and efficiently carry out the duties set forth in this Agreement. It is expected that such duties will not entail the devotion of more than an average of ten (10) hours per month. The Employee will hold the title of Chairman of the Board of Directors and his duties will be consistent with this title, including but not limited to the following:

(a)     Assisting in developing corporate strategy and policy;

(b)     Maintaining relationships with the Board of Directors and the Company's shareholders; and

(c)     Assisting in the development of strategies for the success of the Company.

**1.3     Supervision.** The Employee will report to the Board of Directors.

**1.4    Evaluation and Improved Performance.** The Company may conduct an annual evaluation of the Employee's performance, which will be completed by the Board of Directors.

**1.5    Outside Activities.** It is recognized that the Employee's will devote a limited amount of time to the Company and that the Employee will devote the vast majority of his time to personal purposes and other business interests.

## SECTION 2. COVENANTS AND RESTRICTIONS

The Employee covenants and agrees with the Company that the Employee will not engage in any activities that would bring the Company's reputation into disrepute.

## SECTION 3. REMUNERATION

In consideration of all services to be rendered by the Employee to the Company, the Company will pay to the Employee the base salary of $1,000 per month.

## SECTION 4. EMPLOYEE BENEFIT PLANS

The Company will provide health insurance covering Employee and his spouse at no cost to the Employee. The medical plan provided will be comparable to that provided to the other officers of the Company.

## SECTION 5. NONCOMPETITION

As partial consideration for the Company granting a security interest in its assets as collateral for the sale of Employee's stock pursuant to that Stock Purchase and Sale Agreement dated January 1, 2006, the Employee agrees that, during his employment by the Company and for a period of two (2) years after the termination of his employment, the Employee will not sell the same products that Company sells to any of Company's customers (except when acting as a broker of Company's products), alone, or as a sole proprietor, an employee, a consultant, owner, partner, officer, director, shareholder, member, advisor, or agent, without the consent of Company. Should a default occur pursuant to the terms of a Stock Purchase and Sale Agreement, dated January 1, 2006 or any of the Transaction Documents, then this noncompetition provision shall terminate and no longer be effective.

## SECTION 6. TERMINATION OF EMPLOYMENT

**6.1    Termination for Cause.** Notwithstanding any provision contained in this Agreement to the contrary, the Company may immediately terminate this Agreement for cause. "Cause" is defined as the following conditions:

(a)    The Employee engages in any business activity or investment that is in violation of Section 5 of this Employment Agreement that conflicts or competes with the

business of the Company which is not resolved to the Company's satisfaction within a reasonable period after written notification, or

(b)    The Employee acts in a grossly negligent, reckless, wanton, or criminal manner that actively, directly, or indirectly affects the interests or reputation of the Company; or

(c)    The Employee fails to meet minimum performance standards established by the Company; or

(d)    The Employee is convicted of a felony, based on an act of moral turpitude.

## SECTION 7. INDEMNITY

Company agrees to defend, indemnify and hold Employee harmless from all claims, liabilities, losses and damages, including attorneys' fees, asserted against Employee arising from, or relating to, this Agreement and/or Employee's performance of his obligations hereunder except where the same are caused solely by Employee's grossly reckless conduct or intentional misconduct.

## SECTION 8. ATTORNEYS' FEES

Should legal action be necessary to enforce or interpret this Agreement, the prevailing party shall be entitled to recover from the other party its reasonable costs and attorneys' fees incurred, including any costs and reasonable attorneys' fees incurred in any bankruptcy proceeding and in any appeal.

The parties enter into this Agreement as of the date first written above.

EMPLOYEE

Christopher J. Church

THREE J'S DISTRIBUTING, INC.

Jon R. Jones
President

F:\CLIENTS\17212\003\EMPLOYMENT AGREEMENTV5.DOC

# EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "Agreement"), dated as of this 1st day of January, 2006, is between THREE J'S DISTRIBUTING, INC. (the "Company") and SHERYL J. CHURCH (the "Employee").

## RECITALS

**A.**     The Company is engaged in the business of distributing bread and other food products for resale to retailers and wholesalers and commercial trucking.

**B.**     The Company desires to employ and retain the unique experience, abilities, and services of the Employee as accountant.

**C.**     The Employee agrees to perform the services set forth in this Agreement for the Company in accordance with the terms and conditions of this Agreement.

## AGREEMENT

The parties agree as follows:

## SECTION 1. EMPLOYMENT

**1.1     Term.** The term of this Agreement is for five (5) years, commencing on January 1, 2006, and expiring on December 31, 2011 ("the Term"), unless amended or terminated by agreement of the parties as set forth in Section 9. This Agreement will then continue according to its terms on a year-to-year basis thereafter unless amended or terminated by agreement of the parties as set forth in Section 9.

**1.2     Services.** The Employee will perform such acts and do things as may be necessary to properly and efficiently carry out the duties set forth in this Agreement. It is expected that such duties will not entail the devotion of more than an average of ten (10) hours per month, unless she agrees. The Employee will provide accounting services for the Company and her duties will be consistent with this title.

**1.3     Supervision.** The Employee will report to the President.

**1.4     Evaluation and Improved Performance.** The Company may conduct an annual evaluation of the Employee's performance, which will be completed by the officers of the Company.

**1.5     Outside Activities.** It is recognized that the Employee will devote a limited amount of time to the Company and that the Employee will devote the vast majority of her time to personal purposes and other business interests.

## SECTION 2. COVENANTS AND RESTRICTIONS

The Employee covenants and agrees with the Company that the Employee will not engage in any activities that would bring the Company's reputation into disrepute.

## SECTION 3. REMUNERATION

In consideration of all services to be rendered by the Employee to the Company, the Company will pay to the Employee the compensation of $40 per hour from the date that this Agreement is effective through the termination of this Agreement and any extensions of it.

## SECTION 4. EMPLOYEE BENEFIT PLANS

The Company will provide health insurance covering Employee and her spouse during the time of her employment at no cost to the Employee. The medical plan provided will be comparable to that provided to the officers of the Company.

## SECTION 5. NONCOMPETITION

As partial consideration for the Company granting a security interest in its assets as collateral for the sale of Employee's stock pursuant to that Stock Purchase and Sale Agreement dated January 1, 2006, the Employee agrees that, during her employment by the Company and for a period of two (2) years after the termination of her employment, the Employee will not sell the same products that Company sells to any of Company's customers (except when acting as a broker of Company's products), alone, or as a sole proprietor, an employee, a consultant, owner, partner, officer, director, shareholder, member, advisor, or agent, without the consent of Company. Should a default occur pursuant to the terms of a Stock Purchase and Sale Agreement, dated January 1, 2006 or any of the Transaction Documents, then this noncompetition provision shall terminate and no longer be effective.

## SECTION 6. TERMINATION OF EMPLOYMENT

**6.1 Termination for Cause.** Notwithstanding any provision contained in this Agreement to the contrary, the Company may immediately terminate this Agreement for cause. "Cause" is defined as the following conditions:

(a) The Employee engages in any business activity or investment that is in violation of Section 5 of this Employment Agreement that conflicts or competes with the business of the Company which is not resolved to the Company's satisfaction within a reasonable period after written notification, or

(b) The Employee acts in a grossly negligent, reckless, wanton, or criminal manner that actively, directly, or indirectly affects the interests or reputation of the Company; or

(c)     The Employee is convicted of a felony, based on an act constituting moral turpitude.

## SECTION 7.  INDEMNITY

Company agrees to defend, indemnify and hold Employee harmless from all claims, liabilities, losses and damages, including attorneys' fees, asserted against Employee arising from, or relating to, this Agreement and/or Employee's performance of her obligations hereunder except where the same are caused solely by Employee's grossly reckless conduct or intentional misconduct.

## SECTION 8. ATTORNEYS' FEES

Should legal action be necessary to enforce or interpret this Agreement, the prevailing party shall be entitled to recover from the other party its reasonable costs and attorneys' fees incurred, including any costs and reasonable attorneys' fees incurred in any bankruptcy proceeding and in any appeal.

The parties enter into this Agreement as of the date first written above.

EMPLOYEE                                          THREE J'S DISTRIBUTING, INC.

_____          _____
Sheryl J. Church                                  Jon R. Jones
                                                  President

F:\CLIENTS\17212\003\EMPLOYMENT AGREEMENT(SHERYL)V2.DOC

**STATE OF OREGON**
Corporation Division - UCC
Public Service Building
255 Capitol Street NE, Suite 151
Salem, OR 97310 - 1327
(503) 986-2200 Facsimile (503) 373-1166

# ACKNOWLEDGMENT NOTICE

| | |
|---|---|
| File No: | **7150193** |
| File Date: | **01/11/2006** |
| Expiration Date: | **01/11/2011** |
| Entered By: | **CARMER** |
| Doc Type: | **UCC-1**     **NEW FILING** |

**SUSSMAN SHANK LLP**
**1000 SW BROADWAY SUITE 1400**
**PORTLAND, OR 97205**

Your document was filed showing the file number and date listed above. The debtor name(s) and address(es) and secured party of record name(s) and address(es) are listed below.

If you have any questions regarding this notice, contact the Secretary of State, Corporation Division. Please refer to the file number listed above.

Note: You can access our records or filing forms through the Internet at the address:
   http://filinginoregon.com

**Secured party of record name(s) and address(es)**

CHRISTOPHER J. CHURCH
5433 SE SCENIC LANE #200
VANCOUVER, WA 98661

SHERYL J. CHURCH
5433 SE SCENIC LANE #200
VANCOUVER, WA 98661

**Debtor name(s) and address(es)**

THREE J'S DISTRIBUTING, INC.
16123 SE 98TH BLDG B
CLACKAMAS, OR 97015

Exhibit H - Page 1 of 3




7150193
1/11/2006 4:55:59 PM
OR Sec. of State

**8000870107**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Darin D. Honn  (503) 227-1111

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Darin D. Honn
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME -- insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Three J's Distributing, Inc. | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 16123 SE 98th, Bldg B | Clackamas | | OR | 97015 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION Oregon | 1g. ORGANIZATIONAL ID #, if any 010106-85 | ☐NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| Church | Christopher | | J. | | |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 5433 SE Scenic Lane, #200 | Vancouver | | WA. | 98661 | USA |

4. This FINANCING STATEMENT covers the following collateral:

1. Accounts, notes, contracts, contract rights, chattel paper, electronic chattel paper, cash, checks, drafts, documents, instruments, money, letter of credit rights, promissory notes, deposit and commodity accounts, including without limitation the following: investment property, commercial tort claims, payment intangibles, all rights of Debtor to receive payment in money or kind, all related supporting obligations and security, and all other evidence of indebtedness owed to Debtor from whatever source arising;
2. General intangibles, including, without limitation, any and all choses in action, good will, patents, trademarks, accounts, tax refunds, rights under contracts of insurance, and customer lists;
3. Equipment, goods, software, furniture, vehicles, and trade fixtures;
See also attached addendum

| 5. ALTERNATIVE DESIGNATION [if applicable] | ☐LESSEE/LESSOR | ☐CONSIGNEE/CONSIGNOR | ☐BAILEE/BAILOR | ☐SELLER/BUYER | ☐AG. LIEN | ☐NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | | | | 7. See Instruction Debtor(s) | | |

8. OPTIONAL FILER REFERENCE DATA
17212-003

401 FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 2/05)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** Three J's Distributing, Inc. | |
| OR **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** / **MIDDLE NAME, SUFFIX** |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

| | | | |
|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | |
| OR **11b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
| **11c. MAILING ADDRESS** | **CITY** | **STATE** / **POSTAL CODE** | **COUNTRY** |
| **11d.** ___ **ADD'L INFO RE ORGANIZATION DEBTOR** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID#, if any** ☐ NONE |

**12.** ☐ **ADDITIONAL SECURED PARTY'S** or ☐ **ASSIGNOR S/P'S NAME** - insert only one name (12a or 12b)

| | | | |
|---|---|---|---|
| **12a. ORGANIZATION'S NAME** | | | |
| OR **12b. INDIVIDUAL'S LAST NAME** Church | **FIRST NAME** Sheryl | **MIDDLE NAME** J. | **SUFFIX** |
| **12c. MAILING ADDRESS** 5433 SE Scenic Lane, #200 | **CITY** Vancouver | **STATE** WA / **POSTAL CODE** 98661 | **COUNTRY** USA |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16. Additional collateral description:**

4. Inventory (including goods consigned to Debtor), raw materials, farm products, and work in process;

5. All records and documents relating to any and all of the foregoing including, without limitation, records of accounts and customers whether in the form of writing, microfilm, microfiche, tape, or electronic media;

6. All products, Proceeds, increases, accessions, renewals, replacements, and substitutions of and to any and all of the foregoing.

"Proceeds" shall include proceeds of insurance policies on the Collateral, including, without limitation, business interruption insurance. Where the Debtor and the owner of the Collateral are not the same, "Debtor" herein shall mean the owner of the Collateral, or shall mean both the owner and Debtor as the context requires to give the Secured Parties the broadest rights and remedies.

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest)

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

402  FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 8/02)

# Corporation Division

255 Capitol St. NE, Ste 151
Salem, Oregon 97310-1327
503 986 2200

Office Hours: Monday–Friday | 8am–5pm

## Uniform Commercial Code (UCC)

UCC | Research | Search Help

### Filing Chain for a Debtor

**Filing Type:** UCC

| File Number | Filing Date | Documents | Lapse Date | Pages |
|---|---|---|---|---|
| 7150193 | 01/11/2006 | Initial | 01/11/2016 | 2 |

| Record Type | Name and Address |
|---|---|
| Secured Party | **CHURCH, CHRISTOPHER J.**<br>5433 SE SCENIC LANE #200, VANCOUVER, WA 98661 |
| Secured Party | **CHURCH, SHERYL J.**<br>5433 SE SCENIC LANE #200, VANCOUVER, WA 98661 |
| Debtor | **THREE J'S DISTRIBUTING, INC.**<br>16123 SE 98TH BLDG B, CLACKAMAS, OR 97015 |

| | | | | |
|---|---|---|---|---|
| 7150193-1 | 01/07/2011 | Continuation | 01/11/2016 | 1 |

Notice: Information presented on this Web site is collected, maintained, and provided for the convenience of the reader. While every effort is made to keep such information accurate and up-to-date, the Secretary of State does not certify the authenticity of information herein that originates from third parties. The Secretary of State shall under no circumstances be liable for any actions taken or omissions made from reliance on any information contained herein from whatever source or any other consequences from any such reliance.

Exhibit I - Page 1 of 1

3/1/2011 3:52 PM

Case 18-03123-pcm    Doc 1    Filed 12/10/18

# VOTING AND SHAREHOLDERS AGREEMENT

This VOTING AGREEMENT (this "Agreement"), dated as of this 1st day of January, 2006, is between **THREE J'S DISTRIBUTING, INC.**, an Oregon corporation (the "Company"), **CHRISTOPHER J. CHURCH** and **SHERYL J. CHURCH** ("Shareholder No. 1"), **CONSTANTIN F. IONESCU** ("Shareholder No. 2"), **JAMES R. CARTY** ("Shareholder No. 3") and **JON R. JONES** ("Shareholder No. 4"). Shareholder No. 1, Shareholder No. 2, Shareholder No. 3 and Shareholder No. 4, and all other Shareholders who are a party to this Agreement are collectively referred to as "Shareholders".

## RECITALS

**A.** Shareholder No. 1, after a redemption of a portion of their shares of Company, is selling substantially all of the remaining Shares of Company to Shareholders Nos. 2, 3 and 4 pursuant to that Stock Purchase and Sale Agreement of the same date as this Agreement;

**B.** The Shareholders desire to enter into this Agreement to provide for the manner in which they will vote their shares in connection with the election of directors of the Company until the purchase price for the Shares is paid; and

**B.** The Company desires to enter into this Agreement to facilitate its implementation.

## AGREEMENT

The parties agree as follows:

## SECTION 1. DEFINITIONS

In this Agreement, the following terms have the following meanings:

**1.1** **Board.** "Board" means the Company's Board of Directors.

**1.2** **Person.** "Person" means an individual, corporation, limited liability company partnership, trust, joint venture, or other form of business entity.

**1.3** **Shareholders.** "Shareholders" means Shareholder No. 1, Shareholder No. 2, Shareholder No. 3, Shareholder No. 4, and each future holder of voting shares issued by the Company, who, from time to time, on or after the date of this Agreement, executes and delivers to the Company's Secretary a counterpart of this Agreement. "Shareholder" means one of the Shareholders.

**1.4** **Shares.** "Shares" means all the shares of the Company that are entitled to vote for directors and that are owned or held of record by a Shareholder, including any additional shares that may be acquired after the date of this Agreement.

## SECTION 2. ELECTION AND REMOVAL OF DIRECTORS

**2.1** **Voting for Directors.** In every election of members of the Board, each Shareholder must vote all of the Shareholder's Shares, and any other shares as to which the Shareholder has voting power at the time of the vote, for the following candidates:

    (a)    Four individuals designated by Shareholder No. 1.

    (b)    One individual designated by Shareholder No. 2.

    (c)    One individual designated by Shareholder No. 3.

    (d)    One individual designated by Shareholder No. 4.

**2.2** **Designation of Candidates.** The Persons entitled to designate candidates for the Board must notify the current Board of their respective nominees within 10 days of notice to the Company's shareholders of any shareholders' meeting at which directors are to be elected. If any Person fails to timely deliver a designation, the parties to this Agreement may presume that the incumbent director, if any, designated by the Person, continues to be the designee of such Persons.

At any time, a Shareholder entitled to designate a candidate for the Board may notify the parties to this Agreement of the Shareholder's intention to remove or replace the designee of such Shareholder or to fill a vacancy caused by the resignation of such designee. In that event, the parties will cooperate in calling a meeting of either the Board or the shareholders, as appropriate, and the Shareholders will vote for the removal of the existing designee and the election of the new designee in accordance with this Agreement.

## SECTION 3. AMENDMENT OF ARTICLES

**3.1** **Amendment of Articles.** Unless otherwise agreed by all of the Shareholders, each Shareholder agrees to vote against any amendment of the Company's articles of incorporation that would allow for cumulative voting in the election of Board members while this Agreement remains in effect.

**3.2** **Number of Directors.** Unless otherwise agreed by all of the Shareholders, each Shareholder agrees to vote against any amendment to the Company's articles of incorporation or bylaws that would increase or decrease the number of directors of the Company.

## SECTION 4. IRREVOCABLE AUTHORIZATION OF PROXIES

Each Shareholder hereby irrevocably authorizes Shareholder No. 1 to act as proxy to vote or to give written consent with respect to all of the Shareholder's Shares according to Sections 2 and 3. Each of these respective authorizations is irrevocable and coupled with an interest, in that the Persons authorized to act as proxies are parties to a voting agreement.

Case 18-03123-pcm    Doc 1    Filed 12/10/18

If the other terms and conditions of this Voting Agreement are determined to be void, voidable, or enforceable for any reason, the proxy given Shareholder No. 1 by the other Shareholders shall remain valid and enforceable.

## SECTION 5. LEGEND

Each Shareholder instructs the Company to endorse the following legend on all certificates representing Shares that are issued to such Shareholder during the term of this Agreement:

> THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO TERMS, CONDITIONS, AND RESTRICTIONS CONTAINED IN A VOTING AGREEMENT AMONG CERTAIN SHAREHOLDERS OF THE CORPORATION, A COPY OF WHICH IS ON FILE AT THE OFFICE OF THE CORPORATION.

## SECTION 6. SPECIFIC PERFORMANCE

This Agreement applies to all annual or special meetings of shareholders, or any adjournments thereof, and in all written consents of shareholders. This Agreement is created under ORS 60.257. The Shareholders intend and agree that this Agreement is specifically enforceable in any court having jurisdiction.

## SECTION 7. OTHER VOTING AGREEMENTS

The Shareholders represent and agree that they are not and will not become parties to any voting trust, agreement for voting control, or other like agreement involving any Shares during the term of this Agreement.

## SECTION 8. TRANSFER OF VOTING SECURITIES

The Company may not issue any shares entitled to vote in the election of directors, or any securities convertible into, exchangeable for, or exercisable for, shares entitled to vote in the election of directors, nor may the Company permit the transfer on its books of any of such securities, nor may any Shareholder sell, transfer, assign, or otherwise convey any of such securities, without the consent of Shareholder No. 1, which consent will not be unreasonably withheld, and unless the Person receiving such securities becomes a party to this Agreement as a Shareholder. This Agreement is binding on and will inure to the benefit of the parties and their respective heirs, personal representatives, successors, and assigns.

## SECTION 9. TAX DISTRIBUTIONS

All parties to this Agreement recognize that the Company is a subchapter "S" corporation for tax purposes. As long as such a distribution is legal, the Company and each Shareholder and director who is appointed by a Shareholder agrees to take all reasonable actions to distribute

funds to each Shareholder sufficient to pay state, federal and local income tax obligations of the Shareholder, accruing from flow-through income of the Company to the Shareholder because of the Shareholder's ownership of Company stock.

## SECTION 10. RIGHT OF COMPANY (OR SHAREHOLDERS) TO PURCHASE STOCK OF SHAREHOLDER

If any of Shareholder No. 2, No. 3 or No. 4 ("Bound Shareholder(s)") (a) is no longer an employee of the Company (whether by voluntary termination, involuntary termination, death or disability), (b) is found to be insolvent or bankrupt by a court, (c) makes a general assignment of assets for benefit of creditors, (d) has all or a portion of the Shareholder's Shares transferred to a third party by any court (including to a spouse or ex-spouse), (all of the circumstances specified in (a), (b), (c) and (d) constitute a "Triggering Event") then the Company (or the other Bound Shareholders [pro-rata, based upon their percentage ownership of outstanding Stock] should the Company consent) shall have an option for a period of three (3) years following the date of a Shareholder's employment termination or other Triggering Event to purchase that Shareholder's stock of company at a price as of the date of the notice of exercise equal to a price (a) agreed upon between the selling Shareholder and the Company or the purchasing Bound Shareholders or (b) if the parties cannot agree on a price within thirty (30) days of notice to purchase by the purchasing entity, then the Company's CPA shall select an appraiser who will value the Company, and the purchase price shall be the appraised value of the company multiplied by the percentage of outstanding stock of company being purchased. The purchase price shall not be less than the outstanding balance of the Promissory Note dated January 1, 2006 ("2006 Note") payable by the selling Shareholder to Shareholder No. 1. The terms of payment to the selling Shareholder shall be a five percent (5%) down payment with the balance to be paid over ten (10) years, with interest accruing at the ten year treasury rate, adjusting annually on the anniversary of the sale. All payments to the selling Shareholder shall be paid directly to Shareholder No. 1 and applied to the obligation under the 2006 Note, until such 2006 Note is paid in full. Thereafter payments will be made to the selling Shareholder.

## SECTION 11. TERM

This Agreement terminates upon the payment in full by Shareholders No. 2, No. 3, and No. 4 of their obligations to Shareholder No. 1 to purchase the Shares of the Company and to satisfy their obligations under the Promissory Notes and other documents given by Shareholders No. 2, No. 3, and No. 4 to Shareholder No. 1 in conjunction with the sale of Shares by Shareholder No. 1 to Shareholders No. 2, Shareholder No. 3 and Shareholder No. 4.

## SECTION 12. AMENDMENT

This Voting Agreement may by amended or modified by the vote of Shareholders holding at least 60% of the outstanding voting securities of the Company; provided further, no such amendment or modification shall be effective unless Shareholder No. 1 has voted in favor of such amendment or modification.

Case 18-03123-pcm    Doc 1    Filed 12/10/18

## SECTION 13. NOTICES

All demands and notices given hereunder shall be sent by registered mail addressed to the respective parties at the addresses set forth below, or to such other address as each may hereafter designate by registered mail.

If to Churches:              Christopher and Sheryl Church
5433 SE Scenic Lane, #200
Vancouver, WA 98661

With a copy to:            Darin D. Honn
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205

If to Ionescu:             Constantin F. Ionescu
5830 SW 177th Avenue
Aloha, OR 97007

If to Carty:              James R. Carty
6259 SE 32nd Terrace
Gresham, OR 97080

If to Jones:              Jon R. Jones
13331 S. James Court
Oregon City, OR 97045

## SECTION 14. ARBITRATION

Any dispute or controversy arising out of or in connection with this Agreement, or the breach thereof, shall be determined and settled by arbitration in Portland, Oregon, in accordance with the rules of the U.S. Arbitration and Mediation Service or the Arbitration Service of Portland, with the person commencing arbitration choosing the arbitration service. Any award rendered therein shall be final and binding on the parties and judgment may be entered thereon in any court of competent jurisdiction. This provision shall not prevent a party from seeking in a court of competent jurisdiction an order or judgment for provisional, equitable or injunctive relief, or appearing or filing in a lawsuit where a third party not subject to this Arbitration is a party or is a necessary party.

## SECTION 15. ATTORNEYS' FEES

The prevailing party in any arbitration, trial, bankruptcy proceeding, insolvency proceeding or appeal from any of the proceedings shall be entitled to be awarded its costs and reasonable attorney fees.

Case 18-03123-pcm   Doc 1   Filed 12/10/18

## SECTION 16. BINDING EFFECT

This Agreement shall be binding upon and inure to the benefit of the respective parties hereto, their legal representatives, successors and assigns.

## SECTION 17. ENTIRE AGREEMENT

This Agreement supersedes all agreements previously made between the parties hereto, their legal representatives, successors and assigns, but shall be read in conjunction with the Stock Purchase and Sale Agreement dated January 1, 2006, between the parties.

## SECTION 18. NON-WAIVER

No delay or failure by any party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

## SECTION 19. HEADINGS

Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

## SECTION 20. GOVERNING LAW

This Agreement shall be construed in accordance with and governed by the laws of the State of Oregon.

## SECTION 21. ADVICE OF COUNSEL

Churches, Company and Shareholders No. 2, No. 3 and No. 4 by their signatures hereby:

a.      Acknowledge that Darin D. Honn and Sussman Shank LLP have provided legal advice to only Churches in connection with this transaction and preparation of this Agreement.

b.      Acknowledge that each has been advised to seek separate legal counsel.

c.      Acknowledge that Darin D. Honn and Sussman Shank LLP have provided legal services to Three J's Distributing, Inc. and Constantine F. Ionescu on unrelated matters and may continue to do so in the future.

d.      Consent to Darin D. Honn and Sussman Shank LLP representing only Churches in this transaction and preparation of this Agreement and waive any conflict of interest, if any, which may potentially exist.

Case 18-03123-pcm    Doc 1    Filed 12/10/18

## SECTION 22. CONSTRUCTION

The terms of this Agreement and the Transaction Documents were negotiated between the parties, and should any ambiguity occur, it shall not be construed against any party as the drafter.

## SECTION 23. PAYMENT OF FEES AND COSTS

All parties hereto agree that Company shall reimburse Churches for all attorney fees or costs incurred in this transaction.

## SECTION 24. EFFECTIVE DATE

The effective date of the sale of this Agreement shall be the 1st day of January, 2006.

THREE J'S DISTRIBUTING COMPANY, INC.

_____
Christopher J. Church
Chairman of the Board

_____
Christopher J. Church

_____
Sheryl J. Church

_____
Constantin F. Ionescu

_____
James R. Carty

_____
Jon R. Jones

FILED: JAN 30, 2018 05:00 PM
OREGON SECRETARY OF STATE



LIEN NO. 91447371     THREE J'S DISTRIBUTI

UCC

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company     1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Corporation Service Company
1127 Broadway St NE
Suite 310
Salem, OR 97301

Filed In: Oregon
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME  Three J's Distributing, Inc. | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS  16251 SE 98th Ave | CITY  Clackamas | STATE  OR | POSTAL CODE  97015 | COUNTRY  USA |
|---|---|---|---|---|

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME  Church | FIRST PERSONAL NAME  Christopher | ADDITIONAL NAME(S)/INITIAL(S)  J | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS  5433 SE Scenic Lane, #200 | CITY  Vancouver | STATE  WA | POSTAL CODE  98661 | COUNTRY  USA |
|---|---|---|---|---|

4. COLLATERAL: This financing statement covers the following collateral:
See Exhibit A attached.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative | |
|---|---|
| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor | |

8. OPTIONAL FILER REFERENCE DATA: 17212-003 - DDH - Prepared by TLW

1418 72977

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**

Three J's Distributing, Inc.

OR

**9b. INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

OR

**10b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Church | Sheryl | J | |

| 11c. MAILING ADDRESS 5433 SE Scenic Lane, #200 | CITY Vancouver | STATE WA | POSTAL CODE 98661 | COUNTRY USA |
|---|---|---|---|---|

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

Corporation Service Company
2711 Centerville Rd, Ste, 400
Wilmington, DE 19808

Exhibit K - Page 2 of 3    Case 18-03123-pcm    Doc 1    Filed 12/10/18

# EXHIBIT A
## TO
## UCC FINANCING STATEMENT
Debtor: Three J's Distributing, Inc.
Secured Parties: Christopher J. Church and Sheryl J. Church

1.1     Accounts, Notes, contracts, contract rights, chattel paper, electronic chattel paper, cash, checks, drafts, documents, instruments, money, letter of credit rights, promissory Notes, deposit and commodity accounts, including without limitation the following:  investment property, commercial tort claims, payment intangibles, all rights of Debtor to receive payment in money or kind, all related supporting obligations and security, and all other evidence of indebtedness owed to Debtor from whatever source arising;

1.2     General intangibles, including, without limitation, any and all choses in action, goodwill, patents, trademarks, accounts, tax refunds, rights under contracts of insurance, and customer lists;

1.3     Equipment, goods, software, furniture, vehicles, and trade fixtures;

1.4     Inventory (including goods consigned to Debtor), raw materials, farm products, and work in process;

1.5     All records and documents relating to any and all of the foregoing including, without limitation, records of accounts and customers whether in the form of writing, microfilm, microfiche, tape, or electronic media;

1.6     All products, Proceeds, increases, accessions, renewals, replacements, and substitutions of and to any and all of the foregoing.

"Proceeds" shall include proceeds of insurance policies on the Collateral, including, without limitation, business interruption insurance.  Where the Debtor and the owner of the Collateral are not the same, "Debtor" herein shall mean the owner of the Collateral, or shall mean both the owner and Debtor as the context requires to give the Secured Parties the broadest rights and remedies.

*17212-003\EXHIBIT A TO UCC - THREE J'S DISTRIBUTING / CHURCH, CHRISTOPHER AND SHERYL (02730452);1